Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 489 | **DATE** | 10/19/2004 |
| **CASE TITLE** | Gross vs. Town of Cicero, et. al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, Loren-Maltese's and Johnson and Cicero's motions to dismiss are denied except that plaintiff's official capacity claims against Loren-Maltese and Johnson as to Counts II and IV are dismissed. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | OCT 2 0 2004 date docketed | | |
| ✓ | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | | docketing deputy initials | 41 |
| | Copy to judge/magistrate judge. | | | | |
| MF | courtroom deputy's initials | | | date mailed notice | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| RHONDA GROSS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TOWN OF CICERO; BETTY LOREN-MALTESE, | ) | No. 04 C 0489 |
| former President of the Town of Cicero, in her official | ) | |
| and individual capacity; THOMAS ROWAN, former | ) | |
| Chief of Police, in his official and individual capacity; | ) | Judge John W. Darrah |
| CHIEF OF POLICE WAYNE JOHNSON, | ) | |
| in his official and individual capacity; and | ) | |
| JERALD RODISH, in his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Rhonda Gross, filed suit against Defendants, the Town of Cicero; Betty Loren-Maltese, former President of the Town of Cicero, in her official and individual capacity; Thomas Rowan, former Chief of Police, in his official and individual capacity; Chief Wayne Johnson, in his official and individual capacity; and Jerald Rodish, Commander and superior officer to Gross, in his individual capacity, under the First and Fourteenth Amendments to the Constitution of the United States, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, Title VII, 42 U.S.C. § 2000e, *et seq.*, as amended by the Civil Rights Act of 1991, Civil Rights Act of 1866, 42 U.S.C. § 1983 and § 1988, 28 U.S.C. § 2201 *et seq.*, and under state law for intentional infliction of emotional distress. Count I alleges a Title VII violation of sexual harassment and discrimination against Cicero. Count II alleges a § 1983 violation of Equal Protection against Cicero, Loren-Maltese, Rowan, Johnson, and Rodish. Count III alleges a Title VII violation of retaliation against Cicero. Count IV alleges a § 1983 violation of the First Amendment against Cicero, Loren-Maltese, Rowan,

41

Johnson, and Rodish. Count V alleges Intentional Infliction of Emotional Distress against Rodish. Presently pending before the Court is: (1) Loren-Maltese's Motion to Dismiss Gross's Complaint and (2) Johnson and Cicero's Partial Motion to Dismiss Gross's Complaint.[1]

## BACKGROUND

A reading of Gross's Complaint supports the following summary of the alleged conduct of the parties.

In January of 1999, Gross was hired by Cicero as a police officer. Since 2000, Rodish, her superior officer, subjected her and other women to constant offensive, unwelcome, and physically and sexually abusive behavior. Specifically, Rodish solicited Gross for sex in exchange for assignments and additional work hours. In August of 2000, Gross was told by Rodish that she would have to "f_ck him" in order to receive hours at a high school which was a detail Gross wanted to work. Further, Rodish threatened her indirectly and directly with physical harm and actual physical violence. For example, Rodish made comments that Gross "needed to be shot"; said that he would like to use explosives to "blow up" someone, referring to Gross; and, he would stare Gross down giving her looks as though he wanted to kill her. In addition, Rodish referred to Gross as "cunts," "whores," "sluts," "beafers," "cunt rat beafers," and other demeaning terms. Rodish also stalked Gross, subjected her to surveillance, and started rumors about her and her family.

---

[1] Plaintiff argues that the Court should not consider the exhibits attached to the Defendants' motions because the exhibits are outside the four corners of the complaint. However, the relevant Defendants' exhibits consist of the Conciliation Agreement and Plaintiff's EEOC charges. The Conciliation Agreement and the Plaintiff's EEOC charges are referred to in the Plaintiff's complaint and, therefore, may be considered on a motion to dismiss. *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

Gross complained to Cicero's supervisory staff about Rodish's behavior and expressed that she was "scared for her life." In addition, Gross's father complained to Loren-Maltese on more than one occasion. Gross's father expressed to Loren-Maltese his concern for his daughter's safety as a result of Rodish's harassment and threats. No remedial action was taken by Cicero's supervisory staff or Loren-Maltese against Rodish. Furthermore, because Gross and her father complained about Rodish, they were subjected to retaliation.

On or about June 8, 2001, Gross filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Gross alleged that she was discriminated against based on her gender and subjected to retaliation. On June 17, 2002, the EEOC made a finding that Cicero did in fact violate Title VII by subjecting Gross to discrimination and retaliation. Based on the evidence obtained in its investigation against Cicero, the EEOC established reasonable cause to believe Cicero violated Title VII by discriminating against Gross on the basis of her sex, female, in that Gross was sexually harassed and by retaliating against Gross for opposing Cicero's discriminatory actions.

With respect to the EEOC's decision on June 17, 2002, Cicero and Gross entered into a "Conciliation Agreement" on or about September or October of 2002. The agreement consisted of the following: (1) Gross agreed not to sue Cicero with respect to any of the allegations contained in the EEOC charge unless Cicero failed to "perform the promises and representations" contained in the agreement; (2) Cicero agreed to comply with all the requirements of Title VII; (3) Cicero agreed not to discriminate or retaliate against Gross for her opposition to any practice declared unlawful under Title VII or for filing the EEOC charge or for testifying or participating in any manner in an investigation, proceeding, or hearing under Title VII; (4) Cicero had to pay two thousand dollars to Gross for compensatory damages within ten days of the executed agreement; (5) Cicero agreed to

3

conduct training on sexual harassment for all employees within ninety days of the executed agreement; and (6) Cicero had to conspicuously post a "Notice to Employees" that it was found to have violated Title VII by subjecting an individual to harassment and retaliation. This notice had to be posted within ten days of the executed agreement and remain posted for a period of one year. The agreement also provided that "In the event the terms of this Agreement are not fulfilled, this Agreement may be specifically enforced in court and may be used as evidence in a subsequent proceeding in which either of the parties to this Agreement alleges a breach of this Agreement."

After filing a charge of discrimination with the EEOC, Gross was still subjected to ongoing harassment and retaliation. Gross's father was told by Loren-Maltese, "I can no longer trust you or your daughter because of this EEOC thing." Gross's parents' house was vandalized. Gross's father was pulled out of his assignments with Cicero. Rodish conducted an investigation concerning Gross's mother and began spreading rumors about her. In addition, Gross was subjected to unwarranted and disproportionate disciplinary action. Gross was also subjected to unfounded and unauthorized Internal Affairs complaints and investigations. Besides being denied special assignments and other employment opportunities, Gross was labeled by other officers as a "cunt rat beafer," a label given to women who complained about sexual harassment or discrimination. Another superior officer hung a rubber rat from the rear view mirror of his police car to symbolize what happened to officers who complained about sexual harassment or discrimination.

After filing a complaint with the EEOC, Gross was denied backup assistance by other officers. On June 30, 2002, Gross was dispatched based on a complaint of violence. When other officers responded that they were "en route" to the call, Rowan directed the other officers not to back

up Gross. In September of 2002, another commander in the police department said to Gross, "Cunt around, cunt around, get your cunt pager out."

Gross notified the EEOC, on November 19, 2002, of Cicero's violation of the provisions in the Conciliation Agreement. On March 6, 2003, Gross filed a second charge of discrimination and retaliation with the EEOC. In the second charge, Gross alleged that: (1) on October 4, 2002, Cicero removed her from performing teaching duties in its "Safety Town Program"; (2) in January of 2003, someone wrote graffiti on the bathroom stall calling her a "ho"; and, (3) in January of 2003, Rodish subjected her to intimidation on two occasions.

On June 24, 2003, Gross filed a third charge of discrimination and retaliation. Gross complained that: (1) Cicero breached the Conciliation Agreement; (2) Rodish threatened her life on more than one occasion; (3) her family was retaliated against because she complained of Rodish's unlawful conduct; (4) she was referred to as a "cunt," "whore," "slut," "beafer," "cunt rat beafer," and other derogatory terms; (5) she was subjected to unwarranted and disproportionate disciplinary action; and, (6) she was denied special assignments, opportunities and other terms and conditions of her employment.

Gross was also subjected to sexual harassment and a hostile work environment by other male co-workers and supervisors. This conduct included perpetuating a hostile work environment and condoning sexual harassment; making demeaning and offensive statements to and about Gross; subjecting Gross to unwarranted Internal Affairs investigations; subjecting Gross to unwarranted disciplinary action; and treating Gross differently than other similarly situated employees based on the terms and conditions of her employment.

## ANALYSIS

In reviewing a motion to dismiss, the court reviews all facts alleged in the complaint and any inferences reasonably drawn therefrom in the light most favorable to the plaintiff. *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). A plaintiff is not required to plead the facts or the elements of a claim, with the exception found in Federal Rule of Civil Procedure 9. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002) (*Swierkiewicz*); *Walker v. Thompson*, 288 F.3d 761, 764 (7th Cir. 2002). A filing under Federal Rules of Civil Procedure need not contain all the facts that will be necessary to prevail. It should be "short and plain," and it suffices if it notifies the defendant of the principal events. *See Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003). Dismissal is warranted only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The "suit should not be dismissed if it is possible to hypothesize the facts, consistent with the complaint that would make out a claim." *Graehling v. Village of Lombard, Ill*, 58 F.3d 295, 297 (7th Cir. 1995). The simplified notice pleading relies upon liberal discovery and summary of motions to define disputed issues and facts and to dispose of unmeritorious claims. *See Swierkiewicz*, 534 U.S. at 513.

The Defendants present several arguments why most of Plaintiff's Complaint should be dismissed.

*Cicero's and Loren-Maltese's Motions To Dismiss Based On Plaintiff's Insufficient Municipality Claim Under § 1983*

Cicero and Loren-Maltese argue that the Plaintiff's allegations of an unconstitutional municipal policy or custom are legally insufficient to state a § 1983 action. Therefore, Counts II and IV should be dismissed.

There are three ways in which a municipality can be held liable for a violation of an individual's constitutional rights:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*Baxter by Baxter v. Vigo County School Corp.*, 26 F.3d 728, 735 (7th Cir. 1994).

The Plaintiff asserts liability against Cicero based on a widespread practice and on the fact that her constitutional injuries were caused by person(s) with final policymaking authority or who were delegated with final policymaking authority. Under the widespread practice theory, the Plaintiff alleges that Cicero had a widespread practice of allowing and condoning sexual harassment and retaliation. Cicero argues that the Plaintiff's theory only involves her personal situation and experiences. An individual's own personal experiences are not enough to sufficiently allege an unconstitutional practice. *Wyrick v. City of Chicago*, No. 99 C 4777, 2001 WL 293082, *2 (N. D. Ill. March 26, 2001) (accentuating "single incidents of unconstitutional activity are not enough to trigger liability, nor are a plaintiff's own isolated experiences."). Cicero argues that the Plaintiff's vague references to other women in her complaint are not sufficient to establish municipal

liability under the widespread practice theory. *Figueroa v. City of Chicago*, No. 97 C 8861, 1999 WL 163022, *6 (N. D. Ill. March 12, 1999) (emphasizing that allegations which make vague references to other persons subjected to similar harassment does not establish a pattern which would show policy or custom). Because the Plaintiff did not include references to other women in her EEOC charges, Cicero argues that the Plaintiff is precluded from including the references in her complaint. *See Cheek v. Western and Southern Life Insurance Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (emphasizing that a plaintiff cannot bring claims that were not included in their underlying charge of discrimination).

The Plaintiff must ultimately prove that Cicero had a widespread practice of sexual harassment and discrimination. To do so, the Plaintiff can make references to harassment and discrimination directed and experienced by other women. *See Resnick v. American Dental Ass'n*, 90 F.R.D. 530, 541 (N.D.Ill. 1981) (past discrimination company wide "is highly relevant to the issue of whether [defendant] engaged in such discrimination during [plaintiff's] employment"). The Plaintiff's references to other women in her complaint are not utilized for the purpose of expanding her claims against Cicero under Title VII.

The Plaintiff alleges that there has been media attention surrounding Cicero's alleged practice of First Amendment violations of its employees and that Cicero's supervisors knew or should have known of the harassment; acted pursuant to a custom of discrimination, harassment, and retaliation; Cicero's employees perpetuated a hostile work environment; Cicero itself failed to respond to complaints; and Cicero had a practice of allowing Rodish to remain a police officer regardless of his alleged sexual misconduct and abuse of women. In drawing all reasonable inferences in favor of the Plaintiff, the Plaintiff has sufficiently alleged a widespread custom and practice of Equal Protection

and First Amendment violations. Based upon the Plaintiff's allegations, the Motion to Dismiss Counts II and IV against Cicero is denied.

*Plaintiff's Claims Against Loren-Maltese Are Not Barred By The Statute Of Limitations*

Loren-Maltese argues that Counts II and IV should also be dismissed against her because the Plaintiff's claims are barred by the statute of limitations. In addition, Loren-Maltese contends that she cannot be liable for any conduct occurring after she resigned as Town President.

The statute of limitations for a § 1983 claim is two years. *Hildebrandt v. Illinois Dept. of Natural Resources*, 347 F.3d 1014, (7th Cir. 2003) (*Hildebrandt*); *Licari v. City of Chicago*, 298 F.3d 664 (7th Cir. 2002). According to Loren-Maltese, the Plaintiff's claim cannot rest on any conduct that occurred before January 22, 2002 (two years before the complaint was filed). In addition, to bring a § 1983 claim, the Plaintiff must plead and prove that the Defendant acted "under color of state law." *See Ross v. Town of Austin*, 343 F.3d 915 (7th Cir. 2002). Loren-Maltese argues that once she resigned on August 1, 2002, she was no longer acting "under color of state law" and that, therefore, no § 1983 claim exists beyond her resignation. According to Loren-Maltese, the only actionable conduct against her had to occur between January 22, 2002 and August 1, 2002. Because the Plaintiff does not allege any conduct during this time period, Loren-Maltese argues that she cannot be liable under a § 1983 claim.

A defendant can be held liable under § 1983 only if "he caused or participated in the alleged constitutional deprivation." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). A supervisory official takes part in the deprivation if he "acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the deprivation occurs at his direction or with knowledge or consent." *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982). If

9

the supervisors know about the harassing conduct and "facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see," they act with deliberate, reckless indifference. *Jones v. City of Chicago* 856 F.2d 985, 992-93 (7th Cir. 1988).

The Plaintiff argues that she is not barred by the statute of limitations under a hostile work environment claim.

> Because ... a claim [for hostile work environment] is composed of a series of separate acts that collectively constitute one 'unlawful employment practice,' it does not matter that some of the component acts fall outside the statutory period of time. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile work environment may be considered for the purposes of determining liability.

*National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 103 (2002) (*National R.R.*); *see also, Amtrak v. Morgan*, 122 U.S. 2061, 2074 (2002) (quoting 42 U.S.C. § 2000e-5(e)(1), as long as "[any] act contributing to the claim occurs within the filing period, the entire time period of hostile work environment may be considered by a court for the purposes of determining liability"); *Hildebrandt*, 347 F.3d at 1036 n. 18 (emphasizing that although the rule concerning hostile work environment claims under *National R.R.* applied to a Title VII case, courts have applied this rule of law to § 1983 cases as well).

Viewed in the light most favorable to the Plaintiff, the Plaintiff pled to at least one incident occurring within the statute of limitations against Loren-Maltese. Moreover, the Plaintiff alleges that Loren-Maltese continued to be involved in and took part in the harassment and retaliation of the Plaintiff either directly or indirectly after her resignation. *See National R.R.*, 536 U.S. 101 at 103 (emphasizing that "subsequent events may still be part of one claim."). In addition, the Plaintiff asserts that Loren-Maltese was made aware of the harassment, did nothing to stop it, and was

personally involved in the harassment after her resignation. Accordingly, Plaintiff's § 1983 claims against Loren-Maltese are not barred by the statute of limitations.

*Official Capacity Claims Against Loren-Maltese And Johnson*

Loren-Maltese and Johnson argue Plaintiff's "official capacity" claims against them should be dismissed because the claims are identical to those asserted against Cicero and are based on the same set of allegations.

Official capacity suits are akin to bringing suits against the entity, here, a municipality itself. "As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *See Contreras v. City of Chicago*, 920 F.Supp 1370, 1376 n.1 (N. D. Ill. 1996) (dismissing *sua sponte* official capacity claims). In addition, courts have emphasized that civil rights claims against individual defendants in their official capacities are redundant of the claims brought against a governmental entity and, therefore, must be dismissed. *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir. 1986). Accordingly, Plaintiff's official capacity claims against Loren-Maltese and Johnson as to Counts II and IV are dismissed.

*Defendants' Assertion That The Plaintiff's Speech Is Not "Protected Speech"*

Loren-Maltese, Johnson, and Cicero argue that Count IV should be dismissed against them because the Plaintiff has not alleged any constitutional protected "free speech." Although the Seventh Circuit recognizes that incidents relating to sexual harassment are inherently matters of public concern, Loren-Maltese, Johnson, and Cicero argue that the Plaintiff's claims of sexual harassment do not go beyond her own personal issues. *See Gonzalez v. City of Chicago*, 239 F.3d 939, 941 (7th Cir. 2001) (emphasizing that "speaking up on a topic that may be deemed one of public

importance does not automatically mean that the employee's statements address a matter of public concern").

The Seventh Circuit applies a three-step analysis when determining whether speech constitutes a matter of public concern. *Brown v. Disciplinary Committee*, 97 F.3d 969, 972 (7th Cir. 1996) (*Brown*). First, the court considers whether the speech would be protected if someone other than a public employee had made the statement. *Brown*, 97 F.3d at 972. Second, the court determines whether the speech is something more than an employee grievance. *Brown*, 97 F.3d at 972. Finally, if the court determines that the speech is not an employee grievance, the court must then make a decision as to whether there was a convincing reason to forbid the speech. *Brown*, 97 F.3d at 972.

Upon making the determination of whether speech constitutes a mater of public concern, the court must also look to the context, form, and content of the speech. *Dishnow v. School Dist. of Rib Lake*, 77 F.3d 194, 197 (7th Cir. 1996). Speech is not prevented from being a matter of public concern simply because there is the mere presence of personal motive. *Givhan v. Western Line Consol. Sch. Dist.*, 439 U.S. 410, 413, 414 (1979); *Auriemma v. Rice*, 910 F.2d 1449, 1460 (7th Cir. 1990) (emphasizing that the First Amendment prohibits retaliation against an employee where his complaints address "a broader social cause or have a broader impact on the community or public welfare"). The Plaintiff alleges that her speech does address matters of public concern in that she was denied back-up; Cicero failed to conduct training on sexual harassment for all employees; and Cicero failed to post notice that it had violated Title VII, all of which address matters of public concern. Speech that is related to police protection and public safety does touch on matters of public concern, "even if the speaker was partly motivated by personal concerns." *Gustafson v. Jones*, 290

12

F.3d 89, 913 (7th Cir. 2002).

Cicero also argues that the Plaintiff's allegations based on Cicero's failure to post notice or train its employees on sexual harassment (remedies in the Conciliation Agreement) cannot be used to argue that it violated the First Amendment because these allegations were not complained about in the Plaintiff's EEOC charges. However, "[a]n employee need not file an EEOC charge alleging a breach of the [Conciliation] Agreement to invoke jurisdiction of a federal court over an action arising from the breach of [the] agreement." *Brewer v. Muscle Shoals Bd. of Educ.*, 790 F.2d 1515, 1519 (11th Cir. 1986). Such actions can be brought directly under Title VII in which the federal courts have subject matter jurisdiction. *EEOC v. Liberty Trucking Co.*, 695 F.2d 1038, 1044 (7th Cir. 1982). Accordingly, the Motion to Dismiss Count IV on these grounds is denied.

*Plaintiff's Claims Against Loren-Maltese*

Loren-Maltese asserts that the EEOC Conciliation Agreement bars all of the Plaintiff's claims against her. According to Loren-Maltese, because the allegations in the Plaintiff's original EEOC charge form the Plaintiff's § 1983 claims, the Plaintiff's Complaint must be dismissed.

The EEOC Conciliation Agreement has no application to the Plaintiff's claim against Loren-Maltese in her individual capacity. An agreement that releases any potential claims against a party must "specifically identify the other tortfeasors in order to discharge their liability." *Alsup v. Firestone Tire & Rubber Co.*, 461 N.E.2d 361, 362 (Ill. 1984). Nothing in the language of the Conciliation Agreement implies that the Plaintiff waived any right to bring a claim against Loren-Maltese. Moreover, Loren-Maltese was not a party to the agreement nor could she be because under Title VII, there is no individual liability. *Williams v. Banning*, 72 F.3d 552, 555 (7th Cir. 1995). The only parties to the agreement were the Plaintiff and Cicero. The Plaintiff waived claims against

13

Cicero with respect to the allegations occurring on June 8, 2001, but did not waive any other claims to any other individuals. Furthermore, the Conciliation Agreement did not prevent the Plaintiff from filing claims based on subsequent acts of discrimination and retaliation. Accordingly, the EEOC Conciliation Agreement does not bar the Plaintiff's claims against Loren-Maltese.

## CONCLUSION

For the foregoing reasons, Loren-Maltese's and Johnson and Cicero's Motions to Dismiss are denied except that Plaintiff's official capacity claims against Loren-Maltese and Johnson as to Counts II and IV are dismissed.

Dated: October 19, 2004

JOHN W. DARRAH
United States District Judge